## JAMES E. JAGERS et. al. *v.* WM. H. GRIFFIN.

1. CONTRACT—CONSIDERATION—RESCISION.—To an action of *assumpsit* begun in 1866, for the collection of the purchase money of a slave, sold in 1861, a special plea, setting forth that the sale was made under a defective decree of the probate court, and not averring any offer or effort to return the slave, or to rescind the contract, is no defense to the action.

2. SAME.—Nor are the same facts, with the additional facts that the seller of the slave would not have accepted the return of the slave if offered, and that the slave ran away from the purchaser and was emancipated by the United States, which prevented an offer to return the slave and rescind the bargain, be admissible as defense, under notice filed with a plea of *non assumpsit.*

3. NOTICE—DILLIGENCE.—*Semble:* That a purchaser of personal property under defective proceedings in the probate court—such proceedings being of record, easy of access, and open to public examination—can have no advantage from want of notice of such proceedings being defective.

4. RESCISION OF SALE FOR DEFECT OF TITLE.—An offer to rescind must be made in due time, for a competent reason, and accompanied by a tender of the return of the property. Nothing less will absolve the purchaser from payment.

Error to the circuit court of Amite county. SMILEY, J.:

The plaintiff in error assigned the following errors: 1st. The court below erred in sustaining the demurrer of the defendant in error to the plea filed by the plaintiff in error. 2d. The court below erred in excluding the evidence embodied in the bill of exceptions of plaintiff in error.

*Harris & Withers*, for the plaintiff in error.

We apprehend that the case, as disclosed by the record, differs materially from Ware et al. v. Houghton, 41 Miss., 370. Sufficient reasons are given for not tendering the slave back to the guardian. The slave ran away soon after the pretended sale, and was never after in the possession or under the control of the purchaser, or plaintiff in error, and all the parties were forced from home by the military authorities; and when they returned the slave had been emancipated. Their absence from home, in military service, fully accounts for their apparent neglect in not examining the records of the probate court, and ascertaining that the sale was absolutely void. A sale under a void decree, could confer no title. Cable v. Martin, 1 How., 558; Barnes vs. McGehee, 1 S. & M., 208; Hull v. Clark, 14 S. & M., 187; Ventress v. Smith, 10 Peters, 161. The high court of this state, in Josselyn v. Caughlin, 27 Miss., 852; 30 Miss., 502; and 32 Miss., 104; go only to the extent that the defendant must return the slave, or give a sufficient excuse for not returning or offering to return him. We insist that we have brought ourselves within the rule, and given a sufficient excuse, as the slave ran away, and staid away until after the war, and besides, it was offered to prove that an offer to return, if made, would have been rejected by the guardian. Doubtless, the guardian had stated that he would not accept the slave, if tendered back; for if this were not so, it would have been impossible to prove the fact that he would have refused to accept the slave if tendered back.

McMillan, in his administration, did not have the use of the slave for six years, as in Ware v. Houghton, for he ran away soon after the sale, and was never after in their possession, and it was offered to prove, that if tendered, the guardian would have declined to receive him. So we claim that the case at bar differs essentially from Ware v. Houghton. Besides, it will be noted that the cases decided by this court, in which this question came up, were those in which sales were made by executors or administrators, and the

reasons assigned by the court would seem to limit their application to such cases, on the ground that the purchaser retaining possession, prevents the executor or administrator from having the property legally administered. In this case it was a guardian's sale, and as it is admitted by the demurrer, that the sale was absolutely void, and we offer to prove by the record, that it was absolutely void, we claim that the pretended sale conferred no title, and the note for the pur-- chase money was, and is absolutely void as being without any consideration.

*Geo. L. Potter*, for defendant in error.

The first error assigned relates to the judgment sustaining the demurrer to the special plea by which it was sought to evade a recovery on the note sued on upon the ground that the note was given for a slave sold at guardian's sale, under an order of the probate court—the sale being for the interest of the wards; and it is alleged that the ward was not made a party, or notified, etc., of the proceedings, and so that the order of sale was void. The demurrer was properly sustained. It is a mistake to suppose that the ward must be a party to the application of the guardian for a sale of his personalty. We presume the pleader had in view the provision of the Code, p. 463, art. 151. But that article makes no provision for making the ward a party, or for notice to him. It only requires that the " co-heirs, and three of the nearest relations of the minor," shall be summoned. It is not pretended that this was not done, but the sole objection is, that the minor himself was not made a party and summoned, and the statute does not require this to be done. Moreover, the clauses relied on do not apply to cases of petitions for sales of personal estate. It is true that both lands and personal estate are mentioned in the first part of the section 151, but the whole of the subsequent part of the section, as well as section 152, shows that the special provisions apply only to cases where lands are sought to be sold. By section 150, the like rule applies where lands of the ward are to be sold for his education and maintenance, but not where personalty is to be sold for the same purpose.

The truth is, that unless restricted by statute, the probate courts have a general jurisdiction over the personal estates of their wards, and may order such disposition of the same as they deem proper. Such being the case, a failure to comply with statutory directions would only be ground for error, and the orders of sale would be valid until reversed.

But there is a further fatal defect in this plea. The note bears date January 1, 1861, and was payable at twelve months. The plea shows that McMillan, the vendee, died after the note matured, but how long after is not stated. The claim is that he thus died "before he had discovered the defect of title aforesaid," and this is suggested as an excuse for his not returning the slave. It is further alleged that his administrator was alike ignorant, until the slave was emancipated by the United States, and so he did not return the slave. This whole matter is finally settled in this court, and the precise excuse here presented has been declared insufficient. Ware v. Houghton, 31 Miss., 370; 31 Miss., 350; 30 Miss., 502; 27 Miss., 856. Moreover, a purchaser under a decree is bound to take notice of it, and is affected with notice of the proceedings, defects and all. Ware v. Houghton, 41 Miss., 384.

4. The foregoing remarks answer the second assignment of error, founded on the exclusion of testimony to prove the matters set up in the special plea. There was this further ground for the exclusion of the proof. The defendants below "introduced a witness, and offered to prove," the matters set forth in their notice under the general issue. Among the matters thus sought to be proven orally were the probate proceedings and decree, which could be shown only by a transcript of the record, p. 11, 12. Moreover, they did not offer to prove for what purpose the order of sale was made, and it is plain that notice to the ward was not necessary, if the sale was ordered to raise money for his support. Rev. Code, 463, art. 150. The pretext that the slave ran away and was never heard of by McMillan, the vendee furnishes no excuse for a failure to return him, if it be desired to

rescind the sale. In such a case, the loss would fall to the purchaser. This matter, if fully proved, would be no defense, much less could it avail the parties in the absence of the proceedings of the probate court. Moreover, this matter was embraced in the general offer to prove the matters stated in the notice. If there was a valid objection to any part of the evidence embraced in the general offer, the whole offer was properly refused.

SIMRALL, J. :

*Assumpsit* was brought by Wm. H. Griffin, in the circuit court of Amite county, against the defendant in error, founded on a promissory note. The defendants below pleaded *non assumpsit*, and a special plea, setting up a failure of consideration. Demurrer was sustained to the special plea; whereupon the defendants gave notice of facts that would be offered under the general issue. Verdict and judgment for plaintiff below. The errors complained of contest the correctness of the decision of the court on the demurrer to the plea, and the exclusion of the evidence offered, from the jury.

The second plea in this case is like that in other cases at this term of the court. The excuse offered for not returning the slave is the same as that in the case of McMillan and Wilkinson v. Jas. M. Causey, just decided.

The second error assigned is that the court ought to have received the evidence offered on the trial by the plaintiffs in error. The matter proposed to be proved was the same contained in the plea, with the additional facts that shortly after the purchase, the slave ran away, and that if an effort had been made to return the slave to plaintiff, he would not have accepted the return.

In the case of Ware v. Houghton, 41 Miss. R., 370, the court say the rule of diligence ought to be more stringent where the means of information are of record in the county ; and where title is deduced under a judgment or decree, easy of access and open at all times to examination, a party so deriving title is chargeable with notice of whatever appears

of record.   It is not necessary to push the doctrine to the extent of holding purchasers responsible, with a knowledge of whatever appears of record in the judicial proceedings under which the purchase is made, to dispose of this case. For this purchase was made January, 1861.   McMillan, the purchaser, never knew of a defect of title in his life-time.

Defendants never knew of the defects until after suit brought, which was the 19th April, 1866.   When McMillan died, does not appear.   How long a time he had within which to examine the record, is not shown.   But it was also proposed to be proved that if an effort had been made to return the slave the offer would not have been accepted by the guardian. This could not have originated until the rescision of the contract was agitated.   Nothing was ever heard about the imperfections of the title from any party connected with the sale, or the obligation to pay the price, until after suit brought in 1866.   It were difficult to conceive how or why the guardian should announce that he would decline to receive the slave before there was so much as a hint to him from any of these parties, that the title was bad, and a rescision desired; nor is it seen how this intention or purpose of Causey, the guardian, helps these plaintiffs in their excuse for non return.   The offer to rescind, if made in due time, and for a competent reason, accompanied with a tender of the slave, works a rescision.   It re-invests the title in the ward and absolves the purchaser from the duty to pay the price.   This effect is accomplished, although Causey may have refused to accept.   A knowledge that the guardian would repel the effort to rescind by refusal, does not release from the necessity to make the trial, nor confer on the debtors the same advantages as if they had gone forward in the line of rescision.   The fact that the slave escaped shortly after the sale, should, rather than otherwise, have stimulated the purchaser to look into his title, if he had doubts of its validity.   The plaintiffs in error are sureties for the purchaser, and because of this relation to him, they are no more entitled than their principal, to benefits from the points brought into litigation.   Let the judgment of the circuit court be Affirmed.